# Brown *v.* Montgomery, Appellant.

*Landlord and tenant—Notice to quit—Withdrawal of notice.*

Where a tenant has received the three months' notice to quit required by an existing lease and on application to the landlord procures permission to remain, the notice is in effect withdrawn and the covenants of the existing lease furnish a consideration for the contract of renewal. In determining whether there was an actual withdrawal of the notice, the jury should consider all of the acts and declarations of the landlord, and not merely what he said at a particular conversation.

*Appeals—Charge of court—Harmless error—Landlord and tenant.*

In a proceeding by a landlord to regain possession of leased premises, where the verdict is for the plaintiff, the defendant cannot obtain a reversal upon alleged erroneous instructions given by the trial judge in respect to the measure of damages in case the jury found for the defendant.

*Practice, C. P.—Charge of court—Appeals.*

It is error to confine the attention of the jury to one view of the case where there is more than one which they should consider. If, however, no particular instructions be asked, the court is responsible for the general effect only of the charge, and in considering the charge, the whole of it must be taken together.

Argued May 12, 1902. Appeal, No. 94, April T., 1902, by defendant, from judgment of C. P. Armstrong Co., June T., 1901, No. 122, on verdict for plaintiff, in case of R. L. Brown

v. Alexander Montgomery.   Before RICE, P. J., BEAVER, OR-
LADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Appeal from judgment of justice of the peace in proceedings
by a landlord to secure possession of leased premises.   Before
PATTON, P. J.

The court charged as follows:

It appears from the evidence in this case that Robert L.
Brown, the plaintiff, was the owner of a house and lot on the
corner of Jacob and Jefferson streets in the borough of Kittan-
ning.   On January 1, 1889, he leased this property to Alex-
ander Montgomery, the defendant, for a term of fifteen months
which would make the lease expire on April 1, 1890.

For ten years after that the defendant occupied the premises
without any new lease, except that some changes were made
in the boundaries and in the amount of ground.

It appears that on December 28, 1900, Mr. Brown gave Mr.
Montgomery notice to quit possession of the premises.   You
all understand that.   You understand that it is the duty of the
landlord where there is a lease such as this, from year to year,
if he wants to get possession of the premises on April 1, he
must give notice to his tenant at least ninety days before the
first of next April.   There is no dispute that Mr. Brown did
give such a notice.   If there was nothing else in the way he
would be entitled to recover.

After giving such notice, he waited until after April 1, and
then Mr. Montgomery not having left the premises in accord-
ance with this notice, Mr. Brown began proceedings before a
justice of the peace, and on April 22, 1901, had the defendant
evicted from these premises.   So far as that testimony is con-
cerned, there is no dispute.

The defense set up by Mr. Montgomery is that Mr. Brown
made another agreement after December 28, allowing him to
remain there another year, and that he withdrew the notice of
December 28, 1900.   If that is true, and if this jury find from
the preponderance of the evidence in the case, that Robert L.
Brown withdrew this notice of December 28, 1900, or entered
into a new agreement with Mr. Montgomery, by which he
should stay there another year, then Mr. Montgomery has made
out a complete defense.

How is that?   The question in this case is, did the minds of Mr. Brown and of Mr. Montgomery come together, that is, did they enter into a contract, or were these interviews mere talk and negotiations leading up to a contract.

It is a well-known saying that it takes two to make a bargain.   Did the minds of these two men come together at any time, in which Mr. Brown agreed to lease to Mr. Montgomery this property for another year and Mr. Montgomery agreed to take it, or was it mere talk leading up to an agreement?   [You all know, gentlemen, that persons who have property leased, give notice before January 1 to their tenants to leave, and that it is a very common thing for them and their tenants to come together and make a new agreement for the next year.   It may be by the same agreement or it may be by another agreement, but if they actually make another agreement, why then of course the tenant can stay for another year.   If it is mere talk leading up to an agreement, and the contract is not closed, then there is no bargain, because it takes two to make a bargain.] [5]

It appears that Mr. Brown and Mr. Montgomery were not on speaking terms.   That about December 25 Harry Montgomery, a son of Alex. Montgomery, went to Mr. Brown and asked if his father could have the house for another year.   If I recollect the testimony correctly, Mr. Brown at that time told Harry Montgomery that there were some people talking about taking the property, and that he would let him know in a short time.   That afterwards he told Harry Montgomery that his father could have the house.   That in pursuance of that conversation he drew up a lease and handed it to Harry Montgomery and he gave it to his father.   That his father at first objected to that lease because there was a " cowcatcher " clause in it.   That it was returned to Mr. Brown with a statement of Mr. Montgomery's objection, and then Mr. Brown said, " Well, your father has always paid his rent," and he struck that clause out of the lease.   It was returned to Mr. Montgomery and then he objected to it because the rent had been raised from $200 to $225 a year and the size of the lot had been cut down from sixty-five feet on Jefferson street to fifty-five, and from 112 or 120 on Jacob street to about seventy.   When the lease was again returned to Mr. Brown he refused to agree to the terms that Mr. Montgomery wanted him to agree to, and the lease was then destroyed.

[Now, gentlemen, you take into consideration all the testimony of Mr. Brown and Mr. Alex. Montgomery and of Harry Montgomery and decide whether or not the minds of these two men, Mr. Brown and Mr. Alex. Montgomery ever came together, and whether or not they agreed that this property should be rented to Mr. Montgomery for another year. If they did, the plaintiff cannot recover and if Mr. Brown agreed to withdraw this notice of December 28, and actually did withdraw it, then he could not recover. But if the jury find that Mr. Brown did not withdraw this notice and did not enter into a contract for the next year, then he would be entitled to recover.] [4]

[Mr. Montgomery is corroborated to some extent by the testimony of Mr. Jennings, who stated that he had a conversation with Mr. Brown about February 1, 1901, in which Mr. Brown stated that he had rented this property to Alex. Montgomery, but take into consideration in connection with that testimony the fact that it was about February 1 when Mr. Brown was attempting to lease this property to Mr. Montgomery and that it was about that time that he had drawn up this article. Was that before Mr. Montgomery returned the article to Mr. Brown or afterwards ?] [3]

Mr. Sheridan is called and he states that Mr. Brown said to him that he wanted to rent the house to " them," meaning Mr. Montgomery's daughter and her husband. Take that into consideration whether it has any bearing either way.

Now, gentlemen, this case is strictly for the jury. Take into consideration all this testimony and all the surrounding facts in the case and determine which of these parties is right in this controversy. If you find in favor of the plaintiff, he would be damaged to the amount of $30.00 that he had to pay to Mr. Lahm, and he would also lose the rent of the property from April 1 to April 22. If you find in favor of the defendant, he has told you about how he was put out by the constable and what it cost. That he had two teams from Friday until Monday, but I presume they did not work on Sunday. He also testified that he has been boarding at the Reynolds House ever since at $1.00 a day. The duty of Mr. Montgomery, after being evicted from this house, was to get another suitable house if he could. If he could not then he would be justi-

fied in boarding after his eviction, and could charge Mr. Brown for what his boarding cost, but of course while he was boarding at the Reynolds House he was not paying any rent. You also take into consideration what damage, if any, has been done to Mr. Montgomery's goods. His testimony was not very positive as to what damage was done, but if you find in his favor you take all these things into consideration.

[Gentlemen of the jury, under the act of 1863, if you find in favor of Mr. Montgomery, the defendant, you will only find what damage he has sustained, from April 22 up until the present time, because under the act of assembly, if the verdict is in favor of Mr. Montgomery, he would be entitled to repossess himself and take possession of this property. If you find in favor of him you can only give him such damages as he would be entitled to under our instruction from April 22, to the present time.] [6] If you find in favor of Mr. Brown you allow him what damages he would be entitled to from April 1, the time that Mr. Montgomery refused to deliver up possession, until April 22, the time that he was put out. This is an important case to these men. You will weigh the evidence carefully, consider all the facts surrounding it, and render a verdict in accordance with the weight of the evidence.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1) answer to point quoted in the opinion of the Superior Court; (3–6) portions of charge as above, quoting them.

*James H. McCain*, of *McCain & Christy*, with him *Boyd S. Henry*, for appellant.

*R. A. McCullough*, for appellee.

OPINION BY WILLIAM W. PORTER, J., October 13, 1902:

The burden of the appellant's contention is rested upon the answer of the court below to the defendant's third point of charge. The point and answer are as follows: " If the jury find from the evidence that R. L. Brown, the landlord in this case, said to Harry Montgomery to tell his father, the defendant, that if he wanted the house he could have it, and that fact having been communicated, the defendant agreed to it, such con-

duct on the part of Brown was in effect a withdrawal of the notice to quit; the parties were remitted to the original lease and Brown could not avail himself of the act of 1863, and the verdict of the jury must be for the defendant for such damages as you find he has sustained." To this the trial judge answered, " All of the conversations between Brown and Harry Montgomery will be taken into consideration by the jury, to determine whether or not there was a withdrawal of the notice of December 28, or a new contract entered into." Technically, the court did not in terms affirm or refuse the point by the answer quoted. In substance, however, the answer palpably means that the principle of law invoked is sound, but that the testimony to which the defendant desired the principle to be applied should not be restricted to parts of one or more conversations between the parties, but should include all the conversations which formed a part of the negotiations. It has been held that where a tenant has received the three months' notice to quit required by an existing lease and on application to the landlord procures permission to remain, the notice is in effect withdrawn and the covenants of the existing lease furnish a consideration for the contract of renewal: Supplee v. Timothy, 124 Pa. 375. This doctrine was explicitly affirmed by the court in the case before us in the answer made to the defendant's second point of charge. It was testified by defendant's son and not denied by the plaintiff that in a conversation between the plaintiff and the defendant's son (representing his father) held before the notice to quit was given, the former said that the house was at the defendant's service. The plaintiff, however, contends that nothing came of this. The leave to stay would doubtless, if unconditionally given and accepted without more, have operated as a renewal. It was not so given and accepted. Subsequently a notice to quit was given. Neither of the parties treated the matter as closed. The plaintiff is alleged to have again said that the house was at the defendant's service. But at the suggestion of the defendant's son an attempt was made to agree upon a new lease. The language of the point does not comprehend these facts in the case. They are important since the conduct of the parties is in contradiction of the assumption that by the alleged permission to remain they had concluded an agreement for the coming year. The

court below was therefore right in requiring that the jury should consider all of the conversations between the parties, and in refusing to instruct them to find for the defendant if they believed that the landlord had said generally that if the tenant wanted the house he could have it. It is to be observed that it is the defendant who complains of the answer to the point. The point as drawn might well have been refused. If error was committed no injury to the defendant followed.

The second, third, fourth and fifth assignments are, by the appellant, grouped for consideration. They are excerpts from the charge and, as the appellant says, are not assigned in order to show positive misdirection in them or in the general charge, but for the purpose of showing that the trial judge failed to properly exhibit to the jury all of the questions alleged by the defendant to be in the case. It is error to confine the attention of the jury to one view of a case where there is more than one which they should consider. If, however, no particular instructions be asked, the court is responsible for the general effect only of the charge, and in considering the charge the whole of it must be taken together. In this case the charge so taken discloses no reversible error: Pierson v. Duncan, 162 Pa. 187.

The sixth assignment is without substance. It complains that the court instructed the jury erroneously in respect to the measure of damages in case they found for the defendant. It is difficult to see how this injured the defendant as the jury returned a verdict for the plaintiff: Kunes v. Spangler, 2 Penny. 101.

The judgment is affirmed.